Slip Op. 15-03

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DONGGUAN SUNRISE FURNITURE CO., LTD., TAICANG SUNRISE WOOD INDUSTRY CO., LTD., TAICANG FAIRMONT DESIGNS FURNITURE CO., LTD., and MEIZHOU SUNRISE FURNITURE CO., LTD.,** <br><br> Plaintiffs, <br><br> **LONGRANGE FURNITURE CO., LTD.,** <br><br> Consolidated Plaintiff, <br><br> **COASTER COMPANY OF AMERICA and LANGFANG TIANCHENG FURNITURE CO., LTD.,** <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant, <br><br> **AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,** <br><br> Defendant-Intervenors. | Before: Jane A. Restani, Judge <br><br> Consol. Court No. 10-00254 <br><br> Public Version |

**OPINION**

[Commerce's Fourth Remand Results in antidumping duty administrative review sustained.]

Dated: January 14, 2015

Peter J. Koenig, Squire Patton Boggs (US) LLP, of Washington, DC, for plaintiffs.

Lizbeth R. Levinson and Ronald M. Wisla, Kutak Rock LLP, of Washington, DC, for consolidated plaintiff.

Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Sarah M. Wyss, and Daniel R. Wilson, Mowry & Grimson, PLLC, of Washington, DC, for plaintiff-intervenors.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Rebecca Cantu, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

J. Michael Taylor, Joseph W. Dorn, Daniel L. Schneiderman, and Mark T. Wasden, King & Spalding, LLP, of Washington, DC, for defendant-intervenors.

Restani, Judge: This matter comes before the court following the court's decision in Dongguan Sunrise Furniture Co. v. United States, 997 F. Supp. 2d 1330 (CIT 2014) ("Dongguan IV"), in which the court remanded the U.S. Department of Commerce's ("Commerce") third redetermination in Wooden Bedroom Furniture From the People's Republic of China: Final Results and Final Rescission in Part, 75 Fed. Reg. 50,992 (Dep't Commerce Aug. 18, 2010) ("Final Results"), to Commerce to reconsider its four partial adverse facts available ("AFA") rates assigned to Fairmont's unreported sales of dressers, armoires, chests, and nightstands. For the reasons stated below, the court holds that Commerce's selected AFA rates are supported by substantial evidence, and thus Commerce's fourth remand results are sustained.

## BACKGROUND

The facts of this case have been extensively documented in the court's previous opinions. See generally Dongguan IV, 997 F. Supp. 2d at 1332–34. The court presumes knowledge of those decisions, but summarizes the facts as relevant to this opinion. In the Final Results, Plaintiffs Dongguan Sunrise Furniture Co., Ltd., Taicang Sunrise Wood Industry Co., Ltd.,

Taicang Fairmont Designs Furniture Co., Ltd., and Meizhou Sunrise Furniture Co., Ltd. (collectively "Fairmont") received a rate of 43.23%. 75 Fed. Reg. at 50,997. This rate was based on a rate of approximately 34% for reported sales and a partial AFA rate of 216.01% for a smaller group of unreported sales. Id. at 50,996; Dongguan Sunrise Furniture Co. v. United States, 865 F. Supp. 2d 1216, 1232–34 (CIT 2012) ("Dongguan I"). The court sustained the decision to resort to AFA to calculate the dumping margins for the unreported sales, but held that the 216.01% was not supported by substantial evidence. Dongguan I, 865 F. Supp. 2d at 1226–34. Commerce failed to demonstrate that the AFA rate, which was calculated in a new shipper review for a different entity during a different period of review, reflected Fairmont's commercial reality. Id. at 1233–34.

On remand, Commerce separated the unreported sales into four general product types—armoires, chests, nightstands, and dressers—and determined a separate AFA rate for each general product type.[1] Dongguan Sunrise Furniture Co. v. United States, 904 F. Supp. 2d 1359, 1362 (CIT 2013) ("Dongguan II"). The AFA rates for each category were based on the single highest CONNUM-specific margin below 216.01% from Fairmont's reported sales that fell within the corresponding product category. Id. The resulting AFA rates were 182.15% for unreported armoires, 215.51% for unreported chests, 134.42% for unreported nightstands, and 183.52% for unreported dressers, id., and Fairmont was assigned an overall rate of 39.41%, Dongguan IV, 997 F. Supp. 2d at 1333. The court remanded again, because the AFA rates were

---

[1] Each of the four general categories of merchandise encompass widely varying models, most of which were reported fully. Dongguan IV, 997 F. Supp. 2d at 1333 n.2. Commerce has applied the AFA rates to only the small volume of sales within each category that were unreported. Id.

Consol. Court No. 10-00254                                                                                          Page 4

based on insufficient percentages of Fairmont's actual sales and the vast majority of Fairmont's reported sales suggested that the actual rate was much lower.  Dongguan II, 904 F. Supp. 2d at 1363–64.

In its second redetermination, for each general product category, Commerce selected the single-highest CONNUM-specific margin below 216% where at least 0.04% of the total reported sales in that category were dumped at or above the selected margin.  Dongguan Sunrise Furniture Co. v. United States, 931 F. Supp. 2d 1346, 1349 (CIT 2013) ("Dongguan III").  This resulted in partial AFA rates of 189% for unreported armoires, 161% for unreported chests, 140% for unreported nightstands, and 161% for unreported dressers, and an overall rate of 41.75%.[2]  Id.  Once again, the court remanded to Commerce, noting that "Commerce ignored the majority of the reported and verified information" regarding Fairmont's sales of the four general product types, which suggested that Fairmont's actual rate would be much lower, "and instead relied on an extremely small percentage of [those] sales."  Id. at 1356.

Commerce again calculated new partial AFA rates for each of the four product types during the third remand proceedings.[3]  Dongguan IV, 997 F. Supp. 2d at 1333.  Commerce based the partial AFA rates on the weighted-average dumping margins of the 15% of reported sales with the highest dumping margins within each of the four general product categories.  Id. at

---

[2] The increase in some of the AFA rates from those selected in the first remand results was caused by other changes to the calculation of Fairmont's dumping margin, which increased all of Fairmont's margins.  See Dongguan III, 931 F. Supp. 2d at 1349 n.2.

[3] The partial AFA rates were [[     ]] for armoires, [[     ]] for chests, [[     ]] for nightstands, and [[     ]] for dressers.  Final Results of Third Redetermination Pursuant to Ct. Order, ECF No. 192-1, Attach. I, Table 2 (confidential).

*Confidential Information Omitted*

Consol. Court No. 10-00254                                                                                          Page 5

1334. Fairmont's overall dumping margin rose to 44.64%.  Id.  The court held that the revised rates continued to be unsupported by substantial evidence, because they were not reflective of Fairmont's commercial reality and were far higher than necessary to encourage compliance with Commerce's antidumping proceedings.  Id. at 1336–37.  The court explained that the four product categories Commerce chose to correspond to the unreported sales encompassed a large variety of specific products and dumping margins.  Id. at 1338.  The court opined that in order to account for these variations, Commerce would need to use "a much greater portion of the reported sales in order to achieve an AFA rate consistent with Fairmont's commercial reality" or use "some other reasonable methodology for tying the unreported sales here to the reported sales used to calculate the AFA rates (such as through a comparison of the U.S. prices)," which would avoid the problems created by these fluctuations altogether.  Id.

    In the most recent proceedings, Commerce calculated new partial AFA rates based on "the weighted-average dumping margin of 50 percent of reported sales for each of the four unreported product types with the highest dumping margins."[4]  Final Results of Fourth Redetermination Pursuant to Ct. Order, ECF No. 235-1, 2 ("Fourth Remand Results").  Fairmont's resulting overall margin fell to 41.30%.  Id. at 3.  Fairmont claims that the rates are not reasonably accurate estimates of Fairmont's rates for the unreported sales and that Commerce's methodology in calculating the rates is contrary to the court's direction.  Fairmont Designs Cmts. on Commerce's Fourth Remand Decision, ECF No. 241, 1–8 ("Fairmont Cmts.").

---

[4] The partial AFA rates were [[      ]] for armoires, [[      ]] for chests, [[      ]] for nightstands, and [[      ]] for dressers. Final Results of Fourth Redetermination Pursuant to Ct. Order, ECF No. 234-1, 11–12 (confidential). Commerce's fourth redetermination was submitted under respectful protest. Id. at 6.

*Confidential Information Omitted*

Consol. Court No. 10-00254                                                                                               Page 6

Defendant-Intervenors reiterate their position that 216.01% was the appropriate AFA rate, but otherwise do not object to the Fourth Remand Results. AFMC's Cmts. Concerning Commerce's Final Results of Fourth Redetermination Pursuant to Ct. Order, ECF No. 236, 1–2. Defendant argues that the partial AFA rates comply with the court's remand order and are supported by substantial evidence. Def.'s Resp. to Fairmont's Remand Cmts., ECF No. 242, 2–9.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012). The court will not uphold Commerce's determination if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

When a party fails to act to the best of its ability in cooperating with Commerce to reach an antidumping determination, Commerce is authorized to "use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" when filling factual gaps left in the record. 19 U.S.C. § 1677e(b). Although the statute permits Commerce to rely on an adverse inference, the adverse inference does not replace Commerce's obligation to base its determinations on substantial evidence. See 19 U.S.C. § 1516a(b)(1)(B)(i). Accordingly, even an AFA rate must be supported by substantial evidence. See Gallant Ocean (Thai.) Co. v. United States, 602 F.3d 1319, 1325 (Fed. Cir. 2010). "Substantial evidence requires Commerce to show some relationship between the AFA rate and the actual dumping margin." Id. In other words, Commerce must demonstrate that its selected AFA rate is "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." Id. at 1323 (citing F.lli De Cecco Di Filippo Fara S.

Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir.2000)).

As explained, Commerce now bases the partial AFA rates on the weighted-average dumping margin of the 50% of Fairmont's reported sales with the highest dumping margins in each product category. Fourth Remand Results at 3. Fairmont contends that because the "pool of sales Commerce now uses for the AFA rate had a unit price which is hugely different from the unreported product items," the sales relied upon to calculate to the AFA rates are not representative of Fairmont's commercial reality with respect to the unreported sales. Fairmont Cmts. 2. Accordingly, Fairmont argues, the partial AFA rates derived from these sales are not supported by substantial evidence. Id. at 2–4. Fairmont asserts that Commerce should have used "reported sales within 10% of the price range of the unreported sales as the criteria for representative sales" and then used the 50% of sales with the highest dumping margins falling within these more limited (and representative) pools of sales in order to calculate the partial AFA rates. Id. at 3–4. The partial AFA rates would have been markedly lower had Commerce adopted this methodology. Id. at 4.

Commerce contends that using 50% of Fairmont's own reported sales of the same general product types results in a commercially realistic estimate of the margins for Fairmont's unreported sales of those product types, and using the reported sales with the highest dumping margins maintains the incentive for parties to cooperate during Commerce's inquiries. Fourth Remand Results at 7. Commerce also argues that Fairmont's alternative methodology is improper for two reasons. First, Commerce argues that the gross unit U.S. price alone provides little indication about the probable dumping margin, as dumping margins are calculated based on a comparison of U.S. prices net of sales adjustments to normal value. Id. at 17–18. Second,

Commerce states that even if gross unit prices were indicative of the actual dumping margins for the unreported sales, the gross unit prices for the unreported sales were never verified by Commerce and thus are not reliable data on which to base the AFA rates. Id. at 18–20.

The court holds that Commerce's Fourth Remand Results comply with the remand order and are supported by substantial evidence. In Dongguan IV, the court gave Commerce the option of using "a much greater portion of the reported sales in order to achieve an AFA rate consistent with Fairmont's commercial reality" or "some other reasonable methodology for tying the unreported sales here to the reported sales used to calculate the AFA rates (such as through a comparison of the U.S. prices)." 997 F. Supp. 2d at 1338. Commerce has complied with the remand order in Dongguan IV by choosing the first option and basing the partial AFA rates on 50% of Fairmont's reported sales falling within each of the four general product categories. The court agrees with Commerce that 50% of Farimont's reported sales of similar merchandise is sufficiently representative of Fairmont's commercial reality in selling those types of products.

The court's previous opinions did not require Commerce to tie the reported sales used to calculate the AFA rates to the unreported sales by comparing gross unit U.S. prices, as Fairmont appears to argue. The court has said "that without a rational explanation as to why a small percentage of sales can be considered representative of Fairmont's actual rate . . . Commerce's reliance on minuscule percentages of sales to determine the partial AFA rates does not constitute substantial evidence." Dongguan III, 931 F. Supp. 2d at 1356. This is particularly so because the vast majority of Fairmont's reported sales suggest that its actual dumping margins are likely much lower than the partial AFA rates Commerce heretofore has selected. See e.g., Dongguan IV, 997 F. Supp. 2d at 1336–37; Dongguan III, 931 F. Supp. 2d at 1356. The court repeatedly

expressed concern that Commerce was failing to account for the large variety of individual products and dumping margins reflected in Fairmont's reported sales when selecting AFA rates that must be reflective of Fairmont's commercial reality. See e.g., Dongguan IV, 997 F. Supp. 2d at 1338; Dongguan III, 931 F. Supp. 2d at 1356. The court acknowledged, however, that Commerce potentially could avoid this problem by showing that the small number of sales it is relying on are especially likely to reflect Fairmont's sales behavior with respect to its unreported sales. Dongguan IV, 997 F. Supp. 2d at 1338. Because Commerce has relied on a much greater percentage of sales, and these variances are thus accounted for by using such a large percentage of sales, such a showing is not needed for the partial AFA rates to reflect Fairmont's commercial reality.

  Finally, Commerce reasonably chose to rely on the 50% of reported sales in each general product category with the highest dumping margins over Fairmont's proposed alternative methodology. Whereas Commerce completely failed to address Fairmont's arguments regarding gross U.S. prices in the third redetermination, see Dongguan IV, 997 F. Supp. 2d at 1336, Commerce now raises legitimate concerns regarding the correlation (or lack thereof) between gross unit U.S. prices and dumping margins. See Fourth Remand Results at 17–18. Specifically, Fairmont's reported sales data showed that sales adjustments and normal value, as a percentage of gross U.S. price, varied greatly from sale to sale. See id. Commerce also had concerns about the accuracy of the gross unit U.S. prices for the unreported sales, as these sales were not discovered until verification and thus did not go through the rigorous analysis that would have been performed had the sales been reported properly. See id. at 18–20. Although Commerce perhaps could have used Fairmont's proposed methodology, Commerce has discretion in

choosing between imperfect alternatives, and the court cannot say that Commerce's choice of methodology here was unreasonable. <u>Cf.</u> <u>GPX Int'l Tire Corp. v. United States</u>, 942 F. Supp. 2d 1343, 1358 (CIT 2013) (sustaining Commerce's methodology to adjust respondent's loan interest rate in countervailing duty case when Commerce was faced with "various imperfect methods" and Commerce's choice appeared to be "a reasonable attempt at arriving at a difficult determination").[5]

Commerce's chosen methodology complies with the court's remand order, is reasonable, and the resulting partial AFA rates are supported by substantial evidence.

## CONCLUSION

For the reasons stated above, Commerce's <u>Fourth Remand Results</u> are sustained. Judgment will enter accordingly.

                                                                                                                            /s/ Jane A. Restani
                                                                                                                             Jane A. Restani
                                                                                                                                  Judge

Dated: January 14, 2015
       New York, New York

---

[5] To the extent that Fairmont argues that Commerce should have made sales adjustments to the gross unit U.S. prices when applying the partial AFA rates to the unreported sales, <u>see</u> Fairmont Cmts. 6–7, this argument already has been rejected by the court. <u>See</u> <u>Dongguan I</u>, 865 F. Supp. 2d at 1234 n.23; Fairmont Cmts. 6 (acknowledging that court accepted Commerce's position on this issue). The court finds no reason to revisit that ruling now.